IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

VENUS JOHNSON,

*Plaintiff,*

v.

BALTIMORE COUNTY,
MARYLAND et al.,

*Defendants.*

Civil Action No.: 11-cv-3616

**MEMORANDUM OPINION**

Plaintiff Venus Johnson has filed suit against a host of defendants, alleging common law and constitutional torts arising from her arrest in Baltimore County, Maryland on December 27, 2009. The defendants are Baltimore County, Maryland (the "County"); Kevin Kamenetz, Baltimore County Executive ("Kamenetz," or the "County Executive"); the Baltimore County Council (the "Council" or the "County Council"); the Baltimore County Police Department (the "Police Department"); James Johnson, Chief of the Baltimore County Police Department ("Chief Johnson"); Al Jones, Captain of the Baltimore County Police Department, 6th Precinct ("Captain Jones"); and Baltimore County Police Officers Jason Keller, Clifton Pugh, Rachel Jednorski, and Daniel Burns (collectively, the "Responding Officers"). *See* Complaint (ECF 1). Plaintiff has also named "John and Jane Does 1-20" and "Richard and Jane Roes 1-20," as, respectively, "Unknown Police Officers" and "Unknown Supervisors" of the Police Department. *Id.*

The County Executive, the County Council, and the Police Department have moved to dismiss all counts of the Complaint pertinent to them,[1] pursuant to Fed. R. Civ. P. 12(b)(6), arguing that they were not properly named as parties to this action. *See* "Motion I," ECF 10, and

---

[1] This includes all counts of the Complaint, except Count One.

supporting memorandum, "Memo I," ECF 10-1.   Plaintiff opposes Motion I ("Opposition I,"
ECF 17), to which defendants have replied ("Reply I," ECF 19).

The County, Chief Johnson, Captain Jones, and the Responding Officers have moved to
dismiss or, in the alternative, for summary judgment, as to "the state law causes of action":
counts Nine, Ten, Eleven, Thirteen, Fourteen, Sixteen, Seventeen, Eighteen, and Nineteen of the
Complaint ("Motion II," ECF 11).   They claim that plaintiff did not provide the requisite notice
of these claims, as required by the Local Government Tort Claims Act ("LGTCA"), Md. Code
(2006 Repl. Vol.), § 5-301 *et seq.* of the Courts and Judicial Proceedings Article ("C.J.").[2]
Along with their supporting memorandum ("Memo II," ECF 11-1), the defendants filed several
exhibits.   Plaintiff opposes Motion II ("Opposition II," ECF 16), and has also submitted
numerous exhibits.   After defendants filed a reply ("Reply II," ECF 18), plaintiff filed a surreply
("Surreply," ECF 25), as well as an additional exhibit.

The Court held an evidentiary hearing with respect to Motion II on April 26, 2012.   With
respect to Motion I, no hearing is necessary.   *See* Local Rule 105.6.

### Factual Background[3]

At approximately midnight on December 27, 2009, plaintiff's friend, Michael Adrion,
called her and asked her to drive him home from Lil' Dicky's Saloon (the "Saloon") in Towson,
Maryland, as he was intoxicated.   Complaint ¶ 8.   When plaintiff arrived at the Saloon, Adrion

---

[2] Defendants did not move to dismiss counts Twelve and Fifteen because "the notice
received by the County Attorney…was timely as to those two Counts."   Memo II at 4 n.1.   Count
Eighteen, a "Respondeat Superior Liability" claim against the County, the County Executive,
and the County Council, is divided into two claims, a "Claim For Compensatory Damages" and a
"Claim For Punitive Damages."   The Complaint does not include a "Count Nineteen."
Presumably, in moving for the dismissal of "Count Nineteen," defendants intended to seek
dismissal of parts I and II of Count Eighteen.

[3] The Court construes the facts alleged in the Complaint in the light most favorable to
plaintiff as the party opposing the motions.   *See Philips v. Pitt County Memorial Hosp.*, 572 F.3d
176, 180 (4th Cir. 2009); *Scott v. Harris*, 550 U.S. 372, 380 (2007).

was involved in an altercation with the Saloon owner, Robert Armstrong.  *Id.*  Armstrong called the Police Department and reported that Adrion was vandalizing the Saloon.  *Id.* ¶ 9.  As Adrion and Johnson left the Saloon, they encountered Officer Jednorski, who was responding to Armstrong's call.  *Id*. ¶ 12.  Officer Jednorski detained Adrion, *id.*, and Adrion refused to produce identification in response to the officer's request.  *Id.* ¶ 13.  Officer Burns, who also arrived on the scene, attempted to retrieve what appeared to be a wallet from Adrion's pants.  *Id*.  Adrion "twisted away" and began "yelling obscenities and racial epithets toward Officer Burns while pulling his body away."  *Id.* ¶ 14.  A crowd of onlookers gathered.  *Id*.

Using her cellular phone, plaintiff began to record the incident.  *Id*. ¶¶ 2-3.  Plaintiff alleges that she was then "attack[ed]" by Officer Burns "with such strength and force that she was thrown to the ground," and that Officer Burns "stole" her cellular phone.  *Id*. ¶ 3.  She avers: "[T]he theft of Ms. Johnson's cellular phone was effectuated to prevent evidence of Mr. Adrion's arrest and the retaliatory attack on Ms. Johnson for exercising her First Amendment right to record the Responding Officers from being available to the media or a court of law."  *Id.* ¶ 19.[4]

Johnson was arrested and charged with disorderly conduct, interfering with an arrest, and failure to obey a law enforcement officer.  *Id.* ¶ 4.  She avers that, in the Statement of Probable Cause, which is not appended to the Complaint, the Responding Officers claimed that plaintiff was shouting at them, using racial epithets, refused to leave the scene, and her cellular phone was confiscated as evidence.  *Id.* ¶¶ 15-16.  According to plaintiff, the charges were based on "plagiarized affidavits and a false Statement of Probable Cause" concocted by the responding officers in order "[t]o camouflage their illegal acts."  *Id.* ¶ 4.  She asserts that the cell phone

---

[4] Plaintiff identifies Officers Jednorski, Burns, Pugh, Keller, and other unnamed officers as the "Responding Officers."  But, her statement of facts does not reflect that she interacted with any officers other than Jednorski and Burns.

video supports her version of events. *Id.* ¶¶ 15-16. Further, plaintiff alleges that "Chief Johnson and Captain Jones willfully, or negligently, went ahead and allowed the false arrest, transportation…and false prosecution of Ms. Johnson." *Id.* ¶ 23.[5]

The criminal charges lodged against plaintiff were later dropped. *Id.* ¶ 22. But, plaintiff alleges that, as a result of the events described above, "she suffered serious physical injuries to her right shoulder and right wrist," and continues to suffer "nervousness, anxiety, sleepless nights, fear of police, fear of strangers, and general malaise." *Id.* ¶ 28.

The Complaint contains eighteen counts. Count One asserts a claim against the County under 42 U.S.C. § 1983, based on a theory of municipal liability. *Id.* at 27. Counts Two, Fourteen, and Eighteen assert claims against the County Executive, the County Council, Chief Johnson, and Captain Jones for, respectively, violation of § 1983 under a theory of supervisory liability, *id.* at 31; negligent hiring, training, supervision, discipline, and retention, *id.* at 49; and "respondeat superior liability." *Id.* at 56. Counts Three, Six, Seven, and Eight are § 1983 claims against "all non-entity Defendants," alleging, respectively, malicious prosecution, *id.* at 33; violation of plaintiff's right to free speech, *id.* at 37; violation of plaintiff's right to freedom from unreasonable searches and seizures, *id.* at 38; and false arrest/false imprisonment. *Id.* at 40. Counts Four and Five present claims under 42 U.S.C. § 1985 against "all non-entity Defendants" alleging, respectively, obstruction of justice and conspiracy. *Id.* at 34, 36. Counts Nine, Ten, Eleven, Twelve, Thirteen, Fifteen, and Sixteen, consist, respectively, of the following state law tort claims against "all non-entity Defendants": violation and conspiracy to violate plaintiff's rights under Articles 24 and 26 of the Maryland Declaration of Rights, *id.* at 42; assault and battery and conspiracy to commit assault and battery, *id.* at 44; false arrest and imprisonment and

---

[5] The Complaint does not include any specific averments about the knowledge or conduct of Chief Johnson or Captain Jones.

conspiracy to falsely arrest and imprison, *id.* at 45; abuse of process and conspiracy to abuse process, *id.* at 47; negligence, *id.* at 48; malicious prosecution and conspiracy to maliciously prosecute, *id.* at 51; and intentional infliction of emotional distress.  *Id.* at 53.  And, Count Seventeen lodges a claim against all defendants for conspiracy to violate and violation of plaintiff's rights under Article 40 of the Maryland Declaration of Rights.  *Id.* at 55.  Plaintiff seeks compensatory and punitive damages, as well as declaratory relief.  *Id.* at 59.

Additional facts will be included in the Discussion.

## Standard of Review

Defendants have moved to dismiss the case pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted.  In considering a motion to dismiss under Rule 12(b)(6), a court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'"  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (quoting *Erickson v. Pardus,* 551 U.S. 89, 94 (2007), and *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)).

Under Fed. R. Civ. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The plaintiff need not include "detailed factual allegations in order to satisfy" Rule 8(a)(2), but the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-56 (2007).  A complaint that provides no more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," is insufficient under the Rule.  *Id.* at 555.  So, if the "well-pleaded facts do not permit the court to infer more

than the mere possibility of misconduct," the complaint has not shown that "'the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citation omitted).

A motion pursuant to Rule 12(b)(6) "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks omitted). Moreover, in resolving a Rule 12(b)(6) motion, the court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe v. City of Charlottesville, Va.*, 579 F.3d 380, 385-86 (4th Cir. 2009), *cert. denied*, ___ U.S. ___, 130 S. Ct. 1740 (2010).

Under Fed. R. Civ. P. 12(d), if "matters outside the pleadings are presented to and not excluded by the court," then "the motion must be treated as one for summary judgment under Rule 56." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). With respect to Motion II, the County, Chief Johnson, Captain Jones, and the Responding Officers state, Memo II at 1-2:

> These defendants are moving for dismissal under Rule 12(b)(6) merely because of their obligation to file a responsive pleading putting the case at issue prior to moving for summary judgment. However, pursuant to Rule 12(d) defendants respectfully ask the Court to consider the affidavits and other evidence that is outside the Plaintiff's Complaint. Accordingly, the motion must be treated as one for summary judgment, and judged under the standards of Rule 56.

Ordinarily, summary judgment is inappropriate if "the parties have not had an opportunity for reasonable discovery." *Kolon Indus.,* 637 F.3d at 448. However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). Generally, in order to raise the issue that discovery is needed, the non-movant must

file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)).  Failure to file a Rule 56(d) affidavit "is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." *Evans*, 80 F.3d at 961.  *But see Harrods Ltd.*, 302 F.3d at 244 ("[I]n some cases courts have held that summary judgment was premature even when the opposing party failed to file a [Rule 56(d)] affidavit.").

Although the parties have not yet engaged in discovery, plaintiff has not filed a Rule 56(d) affidavit.  And, plaintiff has appended numerous exhibits to her own submissions. Therefore, I will construe Motion II as a motion for summary judgment.

Under Rule 56(a), summary judgment is properly granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing former FED. R. CIV. P. 56(c)).  In resolving the motion, the Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris,* 550 U.S. 372, 378 (2007).  The nonmoving party must demonstrate that there are genuine disputes of material fact so as to preclude the entry of judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To meet this burden, the party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Id.*; *see In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999).  Stated another way, "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts'" showing that there is a dispute of material facts. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003)

(quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004); *see Celotex Corp.*, 477 U.S. at 322-24.  There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

### Discussion

*Motion I*

The County Executive, the County Council, and the Police Department have moved to dismiss all claims brought against them, arguing that "none of these defendants is legally responsible in an official or agency capacity," and that the County Executive and County Council members who were sued in their personal capacities "are entitled to judgment as a matter of law on the claims against them in their personal capacities."  Memo I at 1.  In their view, the County "is the only entity subject to suit," *id.* at  2, as "[n]either the [Baltimore County] Charter, nor any other statute, confers any independent legal capacity on the County Council, the County Executive, or any of the departments of Baltimore County Government." *Id.* at 3.  Moreover, they note that "Maryland's highest court has confirmed that departments within a county's administrative structure are not independent, *sui juris* legal entities."  *Id.* at 3.

In addition, the defendants assert: "The individual capacity claims are subject to dismissal for the simple reason that they are supported by no facts in the Complaint…."  Memo I at 3.  They point out that Kamenetz and five of the seven members of the County Council "were not sworn in until December 6, 2010," which was almost a year after the incident of December 27, 2009.  *Id.* at  4.  And, they add that, "even if these individuals had been in office at the time of the incident they could only be held liable under a supervisory theory if the Complaint alleged sufficient personal involvement on their part," which they aver it did not.  *Id.*

Plaintiff "concedes" that the County Executive and "the named members of the County Council should be dismissed in their individual capacities, as well as the Baltimore County Police Department as an agency of Baltimore County."  Opposition I at 2.  But, she opposes dismissal of the official capacity claims against the Council and the County Executive.  *Id.* at 4. In support of her position, plaintiff points to the allegations in her Complaint.  In ¶ 37, she alleges that the County Executive is vested "with the responsibility of supervising and managing the…Baltimore County Police Department," and "is a co-employer of the Baltimore County Police Department's officers and supervisors, and is vicariously liable for the actions of the Responding Officers and their superior officers."  Further, she avers, *id.* ¶ 38, that the Council is responsible for "overseeing and directing the procedures and actions of the Baltimore County Police Department and its officers, including the Responding Officers and their superior officers," and is "a co-employer of the Baltimore County Police Department's officers and…vicariously liable for the actions of the Responding Officers and their superior officers."

Defendants vigorously dispute plaintiff's allegations.  They assert: "Mr. Kamenetz is not a 'co-employ<u>er</u>' of the police officers, he is in fact a 'co-employ<u>ee.</u>'"  Reply I at 2 (emphasis in original).  They maintain that "the individuals who could even theoretically be vicariously liable for the acts of the involved police officers have also been sued and have answered the Complaint (Captain Jones and Chief Johnson)."  *Id.*  Further, they posit that "the Council members are not 'co-employers' of the police officers, they are the duly elected legislators in Baltimore County." Insisting that "it is simply not true that the 'Baltimore County Council had the responsibility of overseeing and directing the procedures and actions of the Baltimore County Police Department and its officers,'" *id.* at 2-3, defendants contend that the Council, "as the legislative branch of government..has no such power or responsibility."  *Id.* at 3.

In my view, the Complaint fails to set forth viable "official capacity" claims against the County Executive and the County Council.   Preliminarily, these official capacity claims are duplicative of the claims that plaintiff has brought against the County.   "If, as in this case, the government entity has received an opportunity to respond to a suit filed against one of its agents in his or her official capacity, the suit is in all respects, other than name, a suit against the entity." *Vincent v. Prince George's Cnty.,* 157 F. Supp. 2d 588, 595 (D. Md. 2001).   *See also Kentucky v. Graham,* 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").   Naming the County Executive and the County Council, in addition to the County, is to dress the Complaint in suspenders as well as a belt.

Moreover, to the extent that the claims are based on the legislative and executive oversight that the County Council and County Executive exercise over the Police Department, plaintiff has set forth no basis for attributing liability to these defendants for the alleged unlawful conduct.   She has not alleged any particularized facts showing that any legislative or executive action or inaction precipitated the injuries she allegedly sustained.   The only allegations against these defendants articulated in the Complaint are those found in paragraphs 37 and 38, quoted above, in which plaintiff baldly asserts that these entities are "co-employer[s]" of the Responding Officers and thus responsible for their actions.   Simply put, the Council and the County Executive are not "co-employers" of the Responding Officers.

The responsibilities of the Council are specified in § 306 of Article III of the Charter of Baltimore County, Maryland (the "Charter").   It states that the Council is "the elected legislative body of the county," and "may enact public local laws for the county" and "provide for the

enforcement of all ordinances, resolutions, bylaws and regulations adopted under the authority of law…." Supervisory authority over the Police Department is not mentioned.

The duties of the County Executive are set forth in § 402(d) of Article IV of the Charter, which provides that the County Executive "shall be responsible for the proper and efficient administration of such affairs of the county as are placed in his charge or under his jurisdiction and control under this Charter or by law." Although section 402(d) enumerates certain "express responsibilities, duties and powers" vested in the County Executive, it does not grant supervisory authority over the Police Department.

In contrast, § 541(a) of Article V of the Charter provides: "The police department shall be administered by the chief of police of Baltimore County…." As noted, Chief Johnson is a named defendant in this suit. It is true that the chief of police "shall have and perform such other duties and functions as may, from time to time, be assigned by directive of the county administrative officer or by legislative act of the county council." *Id.* But, plaintiff has not alleged that any "legislative act" is implicated in the conduct complained of, nor any "directive of the county administrative officer," who is an entirely separate officer, albeit one who is "responsible directly to the county executive." *See* Article IV of the Charter, § 403(d).

Plaintiff acknowledges that suit should be dismissed against the Police Department, the County Executive, and the named members of the County Council in their individual capacities. Only the official capacity claims are in issue. As indicated, "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal, supra,* 556 U.S. at 678. There are no factual averments in the

Complaint that would suggest that the County Executive or the County Council was somehow responsible for plaintiff's alleged injuries.

In sum, plaintiff has "not nudged" her claims "across the line from conceivable to plausible…." *Twombley, supra,* 550 U.S. at 570. Therefore, the claims brought against the County Executive, the County Council, and the Police Department in Counts Two, Four, Seventeen, and Eighteen are dismissed in their entirety.

*Motion II*

The County, Chief Johnson, Captain Jones, and the Responding Officers have moved to dismiss Counts Nine, Ten, Eleven, Thirteen, Fourteen, Sixteen, Seventeen, Eighteen, and Nineteen, which are predicated on the LGTCA, claiming that "Plaintiff failed to file a timely notice of claim under the [LGTCA]." Motion II at 1. They assert: "Plaintiff's notice of claim was...defective as a matter of law and her state law claims must be dismissed because timely and proper notice is a condition precedent to suing a local government under Maryland law." Memo II at 3-4.

Plaintiff counters that timely notice was provided. Alternatively, she contends that she has substantially complied with the notice requirement or shown good cause for her failure to comply, and that the defendants were not prejudiced by the brief delay in regard to notice. *See* Opposition II at 7, 9, 10.

In order to pursue a claim pursuant to the LGTCA, the claimant must comply with the notice requirement set forth in C.J. § 5–304. Under C.J. § 5-304(b), "an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury." C.J. § 5-304(c)(1) is also pertinent. It states: "The notice required under this section shall be given in person or by

certified mail, return receipt requested, bearing a postmark from the United States Postal Service, by the claimant or the representative of the claimant." In Baltimore County, such notice "shall be given to the county solicitor or county attorney." C.J. § 5-304(c)(3)(iii).

With respect to the failure to provide the requisite notice, C.J. § 5-304(d) is relevant. It provides:

> Notwithstanding the other provisions of this section, unless the defendant can affirmatively show that its defense has been prejudiced by lack of required notice, upon motion and for good cause shown the court may entertain the suit even though the required notice was not given.

Preliminarily, it is helpful to understand the background of the LGTCA. "With the enactment of the LGTCA, the [Maryland] Legislature sought to provide 'a remedy for those injured by local government officers and employees, acting without malice in the scope of their employment, while ensuring that the financial burden of compensation is carried by the local government ultimately responsible for the public officials' acts.'" *Rios v. Montgomery Cnty.*, 157 Md. App. 462, 475-76, 852 A.2d 1005, 1012 (2004) (quoting *Ashton v. Brown*, 339 Md. 70, 108, 660 A.2d 447, 466 (1995)), *aff'd* 386 Md. 104, 872 A.2d 1 (2005). However, "the LGTCA does not waive governmental immunity or otherwise authorize any actions directly against local governments." *Williams v. Maynard,* 359 Md. 379, 394, 754 A.2d 379, 388 (2000). Rather, local governments are responsible for payment of any judgments. *See* C.J. § 5-303; *Housing Auth. v. Bennett*, 359 Md. 356, 357-58, 754 A.2d 367, 367-68 (2000) (superseded in part by statute as to other grounds).

Of import here, the Maryland Court of Appeals "expressly has held that the notice requirements…are a condition precedent to maintaining an action pursuant to the LGTCA." *Faulk v. Ewing*, 371 Md. 284, 304, 808 A.2d 1262, 1275-76 (2002); *see also Hansen v. City of Laurel*, 420 Md. 670, 682, 25 A.3d 122, 130 (2011) ("It is a longstanding principle of Maryland

13

jurisprudence that the LGTCA notice provision is a condition precedent to maintaining an action directly against a local government[] or its employees.").  The LGTCA's notice requirement is designed

> to protect the municipalities and counties of the State from meretricious claimants and exaggerated claims by providing a mechanism whereby the municipality or county would be apprised of its possible liability at a time when it could conduct its own investigation, *i.e.,* while the evidence was still fresh and the recollection of the witnesses was undiminished by time, sufficient to ascertain the character and extent of the injury and its responsibility in connection with it.

*Moore v. Norouzi,* 371 Md. 154, 167–68, 807 A.2d 632, 640 (2002) (citations and internal quotation marks omitted).  "Among other things, the notice provision enables a governmental defendant to budget properly, to set aside appropriate reserves, and to account for payment of claims under complex accounting rules and tax statutes."  *Rios,* 157 Md. App. at 477, 852 A.2d at 1013.

Under certain circumstances, however, a litigant may be excused from strict compliance with the notice obligation.  As the Maryland Court of Appeals has recognized, "the purpose of the notice statute [is] fulfilled by substantial compliance with the statutory requirements." *Williams,* 359 Md. at 390, 754 A.2d at 386.  In *Faulk,* 371 Md. at 299, 808 A.2d at 1272-73, the Maryland Court of Appeals explained:

> Where the purpose of the notice requirements is fulfilled, but not necessarily in a manner technically compliant with all of the terms of the statute, this Court has found such substantial compliance to satisfy the statute.  *Moore*, 371 Md. at 171-72, 807 A.2d 632; *Maynard,* 359 Md. at 389-90, 754 A.2d 379; *Jackson* [*v. Bd. of Cnty. Comm'rs*], 233 Md. [164] at 167, 195 A.2d 693. Substantial compliance "requires some effort to provide the requisite notice and, in fact, it must be provided, albeit not in strict compliance with the statutory provision." *Moore,* 371 Md. at 171, 807 A.2d 632.

Notably, the Maryland Court of Appeals said in *Condon v. Univ. of Maryland,* 332 Md. 481, 496, 632 A.2d 753, 760 (1993), that substantial compliance is "such communication that

provides...'requisite and timely notice of facts and circumstances giving rise to the claim.'"

(quoting *Conaway v. State,* 90 Md. App. 234, 246, 600 A.2d 1133 (1992)).  Put another way,

> where the tort claimant provides the local government, through the unit or division with the responsibility for investigating tort claims against that local government, or the company with whom the local government or unit has contracted for that function, the information required by § 5-304(b)...to be supplied, *who thus acquires actual knowledge within the statutory period*, the tort claimant has substantially complied with the notice provisions of the LGTCA.

*Moore*, 371 Md. at 178, 807 A.2d at 646-47 (emphasis added).

Even if a litigant has not substantially complied with the notice provision, "the court has discretion to waive the notice requirements upon a showing of good cause."  *Mitchell v. Housing Authority of Baltimore City*, 200 Md. App. 176, 204, 26 A.3d 1012, 1028-29 (2011).  *See* C.J. § 5-304(d).  As discussed, *infra*, Maryland courts evaluate good cause based upon "'whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances.'"  *Heron v. Strader,* 361 Md. 258, 271, 761 A.2d 56, 63 (2000) (citation omitted), *cert. denied,* 389 Md. 401, 885 A.2d 825 (2005).  As the Maryland Court of Special Appeals said in *Hargrove v. Mayor and City Council of Baltimore*, 146 Md. App. 457, 463, 807 A.2d 149, 152 (2002) (citation omitted), "good cause is a test 'of ordinary prudence, that is, whether the claimant prosecuted his claim with that degree of diligence that an orginarily prudent person would have exercised under the same or similar circumstances.'"  *See also Bibum v. Prince George's County*, 85 F. Supp. 2d 557, 565 (D. Md. 2000) ("'[T]he test for [the] existence [of good cause] is that of ordinary prudence, that is, whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances.'  Ignorance of the statutory requirement does not constitute good cause.") (citations omitted).

The conduct of which plaintiff complains in the counts at issue relates to the events of December 27, 2009.  Therefore, as a condition precedent to bringing any state law claims against Baltimore County or its employees, plaintiff was obligated to provide notice of her claims to the County Attorney within 180 days of December 27, 2009, *i.e.*, by June 25, 2010.  Memo II at 3. Plaintiff concedes, Opposition II at 7: "There is no dispute that pursuant to the LGTCA, Ms. Johnson's notice of claims was due on June 25, 2010."  With that date in mind, I turn to review the documentary evidence presented by the parties with their submissions.

Plaintiff's previous counsel, Norris C. Ramsey, Esq., sent a letter to "States Attorney, Baltimore County," dated June 23, 2010, "for purposes of placing the Baltimore County Police Department on notice Ms [sic] Venus Johnson is filing a claim under the Local Government Tort Claims Act."  *See* Defendants' Exhibit 1; Plaintiff's Exhibit A.  Although the letter is typed, it contains a handwritten notation in the top margin, as follows: "Certified Mail # 70092820000371305995."  *Id*.  Plaintiff submitted a United States Postal Service "Track and Confirm" slip indicating that the letter was delivered to the State's Attorney for Baltimore County the next day, on June 24, 2010.  *See* Plaintiff's Exhibit C.  However, under C.J. § 5-304(c)(3), the State's Attorney was not a proper recipient of the notice.

On July 1, 2010, Leo Ryan Jr., Esq., Deputy State's Attorney for Baltimore County, sent a letter to John E. Beverungen, Esq., who was then the County Attorney (and a qualified recipient of the notice), enclosing Ramsey's letter of June 23, 2010.  *See* Defendants' Exhibit 1; Plaintiff's Exhibit D.  Ryan wrote, *id*.:

> Since the State's Attorney's Office is only charged with prosecuting criminal matters, I am forwarding it [to] you for proper handling.  By copy of this letter, I am notifying Mr. Ramsey that your office is the office of contact regarding Ms. Johnson's claim against the Police Department.

That letter was stamped as received by the County Attorney one day later, on July 2, 2010. *Id.* The date of receipt is confirmed by the Affidavit of Donna McCammon, "Office Administrator for the Baltimore County Office of Law," who is responsible for receiving and processing "all notices of claim received by the Baltimore County Attorney pursuant to the Local Government Tort Claims Act." *See* Defendants' Exhibit 4, ¶¶ 1-2, 4.

Ramsey also wrote separately to Beverungen, by letter bearing the date of June 23, 2010. *See* Defendants' Exhibit 2; Plaintiff's Exhibit B. This letter is the subject of considerable dispute. The text of the letter is substantially identical to the text of the letter Ramsey sent to the "States Attorney, Baltimore County" on June 23, 2010. *Id.* But, unlike the letter from Ramsey to the "States Attorney, Baltimore County," the letter to Beverungen does not reflect a certified mail tracking number. Nor did plaintiff provide any verification confirming the mailing on June 23, 2010, or the subsequent delivery by the United States Postal Service. Moreover, Ramsey's letter to Beverungen contains a date stamp showing it was not received by Beverungen's office until July 7, 2010. *Id.* In her Affidavit, McCammon avers that the letter was received on July 7, 2010. *See* Defendants' Exhibit 4, ¶ 5. The next day, July 8, 2010, Beverungen sent a letter to Ramsey, stating: "I am writing to acknowledge receipt of your letter dated June 23, 2010….Please be advised that your claim is untimely under the Local Government Tort Claims Act." *See* Defendants' Exhibit 3. Ramsey never responded to dispute the claim of untimeliness.

Although Ramsey's letter to the State's Attorney was delivered on June 24, 2010 (one day after it was mailed), in compliance with the statutory deadline, the State's Attorney is not a proper recipient under C.J. § 5-304(c)(3)(iii). Ryan's letter to the County Attorney was received on July 2, 2010, one day after it was mailed. But, as noted, Ramsey's letter to the County

Attorney, allegedly mailed on June 23, 2010, was not received until July 7, 2010, two weeks after it was supposedly mailed.

In her Opposition, plaintiff steadfastly insists that Ramsey's notice to the County Attorney was timely, relying only on the commonality of dates (June 23, 2010) in Ramsey's letters to "States Attorney, Baltimore County" and to Beverungen, the County Attorney. Plaintiff asserts: "Because both letters were sent on the same day and both were to be delivered in Towson, Maryland, it is reasonable to believe that the letter to the County Attorney arrived on either June 24, 2010 or June 25, 2010." Opposition II at 8. Plaintiff concedes, however, that "Ms. Johnson's former attorney admittedly cannot find the certification receipts from the United States Postal Service." *Id.* Nor does she explain why Ramsey sent any notice to the State's Attorney, when such notice was not in conformance with C.J. § 5-304(c)(3).

With respect to the fact that plaintiff's letter to the County Attorney was stamped as received on July 7, 2010, and corroborated by Ms. McCammon's sworn statement, plaintiff asserts: "This Court is likely as confused as Ms. Johnson about what cold [sic] have happened to the letter between the day it was mailed by her former attorney [on June 23, 2010] and the date the Defendants assert that it was received." *Id.* at 7-8. Plaintiff posits: "Either there was a problem attributable to the person(s) who processed the mail for the County Attorney that caused…the County Attorney to believe that Ms. Johnson's notice of claim sent by her former attorney to him was late. Or, there were two different files for Ms. Johnson, neither of which the County Attorney has organized in a way that mail could be tracked appropriately." *Id.* at 9.

In their Reply, defendants again contest plaintiff's assertion that the letter to the County Attorney was mailed within the notice period. Reply II at 1-2. They suggest that Ramsey "cannot find the certification receipts," Opposition II at 8, because he "did not send the untimely

letter sent to the County Attorney by certified mail as a return receipt would only have affirmatively established that plaintiff failed to provide notice." Reply II at 3 n.1. In response to plaintiff, they posit the following scenario, *id.* at 2-3:

> [U]ndersigned counsel is not the least bit confused about what happened and suspects that the Court is not either. What happened is this: On June 23, 20009, two days before the expiration of the 180 day notice period, Plaintiff's former counsel erroneously mailed a claim letter to the State's Attorney rather than to the County Attorney. He sent this letter certified as required by law. That is why they have the tracking number for that letter that proves it was delivered to the State's Attorney on June 24, 2010.[] On July 1, 2010 the Deputy State's Attorney[, Ryan,] forwarded that letter to the County Attorney and copied plaintiff's former counsel on the covering letter explaining the mistake. Plaintiff's former counsel presumably received the State's Attorney's letter either July 2nd or 3rd and then, having been apprised of his error, sent the County Attorney a claim letter by regular mail, but neglected to correct the date to acknowledge when that letter was actually signed and mailed. It was that untimely letter that the County Attorney received on July 7, 2010.

In addition, defendants dispute that plaintiff substantially complied with the notice requirement of the LGTCA. *Id.* at 3-4. They point out that "neither the County Attorney nor anyone in the County's claims office received timely notice of this claim." Reply II at 4. *See Moore, supra,* 371 Md. at 178, 807 A.2d at 646-47.

Defendants also argue that plaintiff has not shown good cause for failing to provide notice. To the contrary, they maintain that "she provides absolutely *no cause*" for her failure to comply with the notice provision. *Id.* (emphasis in original). Defendants conclude: "Since plaintiff has not shown any cause for her failure to provide timely notice this Court need not and should not even reach the question of whether the County has been prejudiced." *Id.* at 5.

In her Surreply, plaintiff vigorously disputes defendants' theory that Ramsey did not send the letter to the County Attorney until after he was informed by the State's Attorney's Office that notice was provided to the wrong party. She appends the Affidavit of Norris C. Ramsey, Esq., in which he averred, at ¶ 5: "Both letters were mailed via the U.S. Postal Service, certified mail, on

June 23, 2010."  Ramsey also explained that, "[i]n an effort to be thorough," he sent notices to both the State's Attorney and the County Attorney.  *Id.* ¶ 4.

Alternatively, plaintiff argues: "Even assuming *arguendo* that this Court were to find that Ms. Johnson's notice of claims was ever so slightly untimely, she nonetheless would still have been in substantial compliance with the LGTCA's notice provision."  Opposition II at 9.  In this regard, she observes: "[I]t is undisputed that the latest the County Attorney received notice of Ms. Johnson's claims was merely a few days, which afforded the Defendants enough notice to ensure substantial gratification of the purpose of the LGTCA."  *Id.* at 10.

Plaintiff also asserts: "In the event that this Court were to find that Ms. Johnson did not substantially comply with the LGTCA's notice requirement, dismissal of her claims would be still [sic] not be warranted because she can nonetheless demonstrate good cause for any delay," *id.*, and defendants were not prejudiced, as contemplated by C.J. § 5-304(d).  Conceding that "the burden is on the claimant first to show 'good cause'" before prejudice to the defense is considered, *id.* at 7, plaintiff maintains that she "exercised the degree of due diligence that an ordinarily prudent person would have exercised."  *Id.* at 10.  She states: "[E]ven assuming *arguendo* that Ms. Johnson's notice of claims was only sent to the State's Attorney, it would have been excusable when judged by the reasonable person standard."  *Id.* at 13.  In her view, "defendants have not met their affirmative duty to establish prejudice . . . ."  *Id.*

Following the parties' presentations in their written submissions, I held an evidentiary hearing on April 26, 2012, to elucidate the parties' dispute concerning notice to the County Attorney.  At the hearing, counsel acknowledged that it is appropriate for the Court to resolve the

factual dispute as to notice, for the purpose of determining whether the condition precedent was satisfied.[6]  To that end, both sides presented evidence and argument.

Donna McCammon testified largely in conformance with her affidavit.  She reaffirmed that on July 2, 2010, the County Attorney received notice of plaintiff's claims from the State's Attorney's Office, by way of Ryan's letter dated July 1, 2010.  She also testified that, on July 7, 2010, the County Attorney received Ramsey's letter dated June 23, 2010.  According to McCammon, the date stamp is accurate.  She noted that, at the end of every work day, she puts the next day's date on the stamp to ensure that it is always correct.  And, in the event she is not at work, another worker is responsible for stamping and processing the mail.

McCammon recalled that the office was closed on Monday, July 5, 2010, in observance of the 4th of July, which fell on a Sunday.  The office was open on July 6, 2010, however.  She also observed that Ramsey never responded to Beverungen's letter of July 8, 2010, asserting that the notice was untimely.

Notably, McCammon testified that she always saves the envelopes in which correspondence arrives.  At that point, the envelope in which Ramsey's letter to the County Attorney arrived had not been made part of the record.[7]  McCammon also testified that correspondence that arrives by way of certified mail is signed for in the mail room, and a record is kept of the delivery.

Norris Ramsey, plaintiff's counsel in June and July 2010, testified that he personally went to the post office to mail both notice letters, each dated June 23, 2010.  He also claimed that both were mailed by certified mail, return receipt requested.  But, Ramsey conceded that he did

---

[6] In writing this Opinion, I rely on my notes taken at the hearing, and not on a transcript. Accordingly, I have not used direct quotes, unless otherwise noted.

[7] Indeed, the information seemed to come as a surprise to defense counsel.

not have "green cards" or receipts for the letters.  He explained that his office is in his home, which sustained flooding in December 2010, and that the green cards or receipts may have been lost or damaged in the flood.  He also stated that he was not the one who handwrote the certified mail number that appears on the copy of the letter sent to the State's Attorney's Office.  Mr. Ramsey also claimed that he was available to receive mail every day in early July 2010.

On cross-examination, Mr. Ramsey was presented with the scenario posited by defendants in their brief: the letter to the County Attorney, although dated June 23, 2010, was not mailed until after Ramsey was informed by Ryan that he had given notice to the wrong office, leading to the County Attorney's receipt of that letter on July 7, 2010.  When asked whether that version of events could have been true, my notes reflec that Mr. Ramsey said: "I'm not sure."  Mr. Ramsey recalled receiving Ryan's letter, although he was not certain of the date of receipt, and admitted that he never disputed the County Attorney's assertion in the letter of July 8, 2010.

Ramsey was unable to explain why, if the two letters were mailed the same date (and presumably prepared at the same time), the zip code was handwritten on the letter to the State's Attorney, but typed on the letter to the County Attorney; why his name was typed at the bottom of the letter to the State's Attorney, but not on the letter to the County Attorney; or why the letter to the State's Attorney contained an attachment, but the letter to the County Attorney did not. Defense counsel asked Ramsey whether the letter to the County Attorney omitted an attachment because Ramsey knew from the letter forwarded by Ryan to the County Attorney, that the County Attorney had already received the attachment.  According to my notes, Ramsey stated, in effect: "I don't recall."

Lisa Peffers, a "Liability Claims Supervisor" in the Claims Management Unit of the Baltimore County Office of Budget and Finance, testified that she is responsible for investigating

tort claims brought against the County.  Ms. Peffers's testimony was relevant as to the matter of prejudice to the defense resulting from the alleged failure to comply with the notice requirement.[8]

In light of McCammon's revelation concerning the County Attorney Office's retention of envelopes in which correspondence arrives, the parties were afforded an opportunity to investigate the matter further.  On April 27, 2012, defense counsel advised the Court that the envelope containing the correspondence from Mr. Ramsey to the County Attorney had been located, with a post-it note attached to it.  *See* ECF 30.  The original envelope, along with the post-it note, were delivered to chambers the same day.  Defense counsel correctly observed that the envelope shows that the notice "was not sent certified mail, as evidenced by the fact that there are no 'green card' stubs affixed to the envelope."  *Id*. at 1.  He also maintained that the postmark, which he conceded is "blurry," reads "7/5/ JULY."  *Id*.[9]  According to defense counsel, the post-it note was written personally by County Attorney Beverungen.  *Id*.  It reads "untimely—Lisa get police records."  *Id*.

On May 1, 2012, plaintiff's counsel responded, without challenging the authenticity of the envelope.  *See* ECF 32.  He stated, *id*. at 1-2:[10]

> We do not believe the envelope reads "7/5 JULY 2010."  Listing the month as "7" followed by writing out the month as "JULY" would be redundant.  We believe that the stamp reads XX YYY ZZZZ.  XX being the two-digit day of the month from 01-31.  YYY being the three-digit abbreviation for the month (in our case, either JUN or JUL).  ZZZZ being the four digit year (in our case, it is undisputed that the year is 2010).

---

[8] The Affidavit of Peffers has also been made part of the record.  *See* Defendants' Exhibit 5; Plaintiff's Exhibit E.

[9] Defense counsel also submitted an enlarged copy of the postmark.

[10] ECF 32 also contains legal arguments, discussed *infra*.  Defense counsel responded to ECF 32 by letter submitted May 1, 2012 (ECF 33), discussed, *infra*.

We believe that the envelope reads either 23 JUN 2010 or 25 JUN 2010. We do not believe the first digit (the first "X" digit) is zero (0), one (1), three (3), or seven (7)….[T]he first digit has a distinct slant, but we believe that this digit can only be read as a 2. Because there are no days of the month in the seventies, we do not believe this digit is "7." No other possible digit contains this unique slant. The second digit (the second "X" digit) appears, at first glance, to be a 3 or a 5. This fits Mr. Ramsey's testimony concerning the mailing of the letter[11]….We also believe that the last smudge in the YYY month is an "N." It is undisputed that the first two digits read "JU," but we believe the last smudge to be too large to be an "L" as opposed to an "N" ("N" has an additional leg).

Plaintiff's counsel also submitted additional information in a letter submitted to the Court on May 4, 2012. *See* ECF 34.[12] He appended copies of three envelopes, for the purpose of establishing the format of a typical postmark, which "demonstrate that the United States Postal Services [sic] ('USPS') utilizes the XX YYY ZZZZ format discussed in Document 32." *Id.* at 2. Inspection of the envelopes conforms with this assertion.

It is evident that "JU" are the first two letters of the portion of the postmark that corresponds to the month. It is the last letter of the three letters pertaining to the month that is determinative of the month of mailing. If the disputed last letter is an "N," then the letter was mailed in June. But, if it is an "L," it was mailed in July. Yet, in my view, that last letter is indecipherable.

Plaintiff points out that the envelope at issue, submitted with ECF 30, "used a commemorative cancellation mark to cancel the stamp...," *id.*, i.e., "Never Stop Looking for Missing Children." According to plaintiff, this cancellation mark was only used through the end of June 2010, and thus the letter was mailed in June. *Id.*

Plaintiff appended to ECF 34 a press release of May 27, 2010, circulated by the Postal

---

[11] Mr. Ramsey did not suggest that he mailed the letter to the County Attorney on June 25, 2010. He stated that he mailed it on June 23, 2010, and then, when asked whether he could have sent it at a later date, such as July 2, 3, or 6, he stated: "I'm not sure."

[12] ECF 34 also contains legal arguments, discussed, *infra*.

Service, about the commemorative cancellation mark, noting that the cancellation mark was used "through the end of June [2010]."  Notwithstanding the text of the press release, plaintiff asserted, ECF 34 at 2:

> Our informal discussions with the USPS indicate that its last date of service for the mark was June 25, 2010.  The Postal Service was unable to provide an affidavit by the May 4, 2012, deadline, but we would proffer that a postal representative would testify to the date of June 25, 2010.

According to plaintiff, the use of the particular cancellation mark indicates "that Mr. Ramsey's letter was processed by the USPS before June 25, 210—making Mr. Ramsey's notice timely." ECF 34 at 2.

Inspection of the envelope reveals that it does, in fact, bear a stamp with the profile of a girl and a boy and states: "Never Stop Looking for Missing Children."  However, plaintiff never submitted an affidavit from the Postal Service, consistent with her assertion in ECF 34 at 2.

*Actual Compliance*

Plaintiff did not satisfy the test for actual compliance with the notice requirement of the LGTCA.  As the Maryland Court of Appeals recently stated, "a plaintiff must plead affirmatively satisfaction of a condition precedent."  *Hansen, supra,* 420 Md. at 684, 25 A.3d at 131.  Put another way, "[a] plaintiff must not only satisfy the [LGTCA] notice requirement strictly or substantially, but also plead such satisfaction in his/her complaint.  If a plaintiff omits this step, he or she is subject to a motion to dismiss…based on a failure to state a claim upon which relief can be granted."  *Id.* at 694, 25 A.3d at 138.

It is evident from a review of the Complaint that plaintiff did not plead strict compliance. To the contrary, at ¶ 48, plaintiff alleges: "[T]his Complaint…complies with the Maryland Local Government Tort Claims Act," as "Ms. Johnson submitted notice of her claims via United States Postal Service certified mail, return receipt requested, postage prepaid *to the State's Attorney for*

*Baltimore County* on June 23, 2010," and, on "July 1, 2010, the State's Attorney's Office forwarded the notice of Ms. Johnson's claims to Baltimore County attorney John Beverungen." (Emphasis added.)   In her Complaint, plaintiff does not allege that she provided notice to the *County Attorney*, within the time prescribed, "via United States Postal Service certified mail, return receipt requested, postage prepaid…."

Moreover, the defect is not one that could be remedied by granting leave to amend.   This is because the envelope submitted by defendants with ECF 30 conclusively establishes that notice was *not* provided to the County Attorney *by certified mail, return receipt requested*, as required by C.J. § 5-304(c)(1).   Therefore, plaintiff did not satisfy the standard for actual compliance.

### Substantial Compliance

The Complaint, at ¶ 48, states: "Ms. Johnson further asserts Baltimore County's good and sufficient actual and/or constructive prior notice of her claims."   I will liberally construe this assertion as a claim of substantial compliance.   *See Hansen*, 420 Md. at 684, 25 A.3d at 131.

As noted, "[w]here the purpose of the notice requirements is fulfilled, but not necessarily in a manner technically compliant with all of the terms of the statute," the court can find "such substantial compliance to satisfy the [LGTCA]."   *Faulk*, *supra,* 371 Md. at 299, 808 A.2d at 1272.   A plaintiff bears the burden of demonstrating both substantial compliance and good cause. *White v. Prince George's County*, 163 Md. App. 129, 138, 877 A.2d 1129, 1134 (2005); *see also Brown v. Baltimore Police Dep't*, No. RDB–11–00136, 2011 WL 6415366, *13 (D. Md. Dec. 21, 2011) ("The Plaintiff has the burden of demonstrating that he substantially complied with the notice requirement.").[13]

---

[13] In ECF 34, at 1, plaintiff cites *Hansen* for the opposite proposition.  *Hansen* states, 420

Plaintiff maintains that "'a claimant may comply substantially with a notice requirement by giving notice…by regular rather than certified mail….'" *Wilbon v. Hunsicker*, 172 Md. App. 181, 200, 913 A.2d 678, 690 (2006) (quoting defense counsel).   If the notice to the County Attorney were timely, but not sent by certified mail, I would readily conclude that plaintiff satisfied the standard for substantial compliance.   Assuming Notice to the County Attorney was *untimely*,[14] however, one question is whether plaintiff's timely notice to the State's Attorney constitutes substantial compliance.

Notice to the State's Attorney does *not* amount to substantial compliance.   In *Bibum, supra,* 85 F. Supp. 2d at 564, Judge Chasanow stated: "[W]hen the notice does not apprise the proper officials that the [p]laintiff is pursuing a claim, there is not substantial compliance."   *See also Halloran v. Montgomery Cnty. Dep't of Pub. Works*, 185 Md. App. 171, 183, 968 A.2d 1104, 1111, *cert. denied,* 409 Md. 48, 972 A.2d 861 (2009).   Substantial compliance will be found when "the relationship between the person or entity in fact notified and the person or entity that the statute requires be notified was so close, with respect to the handling of tort

---

Md. at 687, 25 A.3d at 133:

> [P]laintiffs must allege the performance of conditions precedent, but they may do so generally.   *See* Rule 2-304(b).   It is up to defendants, then, to show that "a particular condition precedent has in fact [not] been satisfied…."   (Alteration in *Hansen*).

But, *Hansen* addressed actual compliance, not substantial compliance.   Clearly, in the context of actual compliance, defendants met any burden imposed upon them.

As is also evident, the Maryland Court of Appeals cited Maryland Rule 2-304(b).   It states: "In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred."   Commentary to the Rule explains: "Whether a particular condition precedent has in fact been satisfied should be raised by the opposing party in the answer to the general allegation."   Paul V. Niemeyer & Linda M. Schuett, MARYLAND RULES COMMENTARY 183 (3rd ed. 2003).   It cannot be disputed that this burden was discharged by defendants.

[14] I discuss, *infra*, the issue of the timeliness of the Notice to the County Attorney.

claims, that notice to one effectively constituted notice to the other." *Ransom v. Leopold*, 183 Md. App. 570, 584, 962 A.2d 1025, 1033 (2008).

*Moore,* 371 Md. 154, 807 A.2d 632, is instructive.  In that case, the petitioners were injured in separate accidents, allegedly prompted by the negligence of employees of Montgomery County, Maryland.  *Id.* at 159, 807 A.2d at 635.  Neither petitioner sent notice to the Montgomery County Executive, as then required by C.J. § 5-304(c)(1)(iii),[15] nor was it alleged that the County Executive was ever provided with notification from another source.  *Id.* However, at the relevant time, Trigon Administrators, Inc. ("Trigon") provided claims administration services for Montgomery County, and both petitioners informed Trigon within the requisite period.  One petitioner, Moore, "discussed the accident with [a] Trigon representative," and his attorney corresponded with Trigon by letter.  *Id.* at 162, 807 A.2d at 637.  Trigon informed Moore that Trigon was "the third party administrator for Montgomery County, and [was] currently investigating the facts surrounding [the accident]."  *Id.* at 162-63, 807 A.2d at 637 (some alterations in original).  The other petitioner, Mendelson, "telephoned Trigon and informed them of the damage to [the] vehicle."  *Id.* at 164, 807 A.2d at 638.  That same day, "a Senior Claims Representative at Trigon, wrote to…Mendelson, identifying Trigon 'as the claims administrator' for the Montgomery County Police and advising that, '[w]e have received formal notification of [the] incident….'"  *Id.* at 165, 807 A.2d at 638-39 (some alterations in original).

The petitioners later filed suit against the County, but their claims were dismissed, based on the failure to provide notice to the County Executive.  The Maryland Court of Appeals disagreed, based on the close nature of the relationship between Trigon and the County.  It said,

---

[15] C.J. § 5-304 was amended in 2009, which altered the numbering of the statutory provisions, but did not substantively alter them.  Former C.J. § 5-304(c)(1)(iii) is now found in C.J. § 5-304(c)(3)(ii).

*id.* at 177, 807 A.2d at 646: "Although the County uses a third party, private company to act as its claims administrator, it is clear, given this contractual arrangement, its comprehensiveness and the degree of control that the County maintains, that actual notice to the County results when notice is given to Trigon."

In contrast, in *Ransom, supra,* 183 Md. App. 570, 962 A.2d 1025, the Maryland Court of Special Appeals found that petitioners Ransom and Hancock did not substantially comply with the notice requirement of the LGTCA.  In that case, an Anne Arundel County Police Officer shot and killed the petitioners' dog while responding to their call about a suspicious vehicle.  *Id.* at 574, 962 A.2d at 1027-28.  The officer claimed the dog was attacking him, while the petitioners maintained that the dog merely "greeted him enthusiastically."  *Id.*  By letter dated June 14, 2007, plaintiff's counsel gave notice to the Anne Arundel County Attorney on June 18, 2007.  *Id.* at 545, 962 A.2d at 1028.  The letter stated that Ransom and Hancock had "sent notice within 180 days to Prince George's County," and "[i]mmediately upon learning that the injury occurred in Anne Arundel County," sent the letter to Anne Arundel County.  *Id.*  By the time the letter was sent to the Anne Arundel County Attorney, however, the notice period had expired.  *Id.*  Anne Arundel County moved to dismiss, arguing that the claims were barred because the appellants had not given timely notice within 180 days, as required by C.J. § 5–304(b).  *Id.* at 576, 962 A.2d 1029.  Ransom and Hancock alleged that they had substantially complied with the notice requirement.  *Id.*

The Maryland Court of Special Appeals concluded that, even if "a letter in fact was mailed by counsel for Ransom and Hancock to the Prince George's County Attorney's Office…and that the mailing of the letter and its contents conformed to all requirements" of C.J. §§ 5–304(b) and (c), because "it should have been mailed to the Anne Arundel County Attorney,

there was not substantial compliance with the LGTCA's notice requirements." *Id*. at 583-84, 962 A.2d 1033.   The court reasoned, *id*. at 584, 962 A.2d 1033, that the letter sent to Prince George's County

> was not sent to any Anne Arundel County person or entity having anything to do with tort claims against that county.   Indeed, it was sent to an entirely different county altogether.   The May 25, 2007 letter was not a communication that provided requisite and timely notice of facts and circumstances giving rise to [Ransom and Hancock's] claim to Anne Arundel County.   It did not communicate anything to Anne Arundel County.   Anne Arundel County did not acquire from that letter any knowledge of the tort claims the appellants intended to bring. Accordingly, the purpose of the LGTCA notice requirement was not satisfied by the May 25, 2007 letter.   On the facts as pleaded in the complaint, the doctrine of substantial compliance does not apply.

*See also Wilbon*, *supra,* 172 Md. App. 181, 913 A.2d 678 (mother of deceased arrestee submitted a "Statement of Incident" within 180 days of her son's injuries to the body that later became the Baltimore City Civilian Review Board, but it was not until one year after the decedent's death that a "Notice of Claim Form" was properly submitted to the City Solicitor; submission of the Statement of Incident did not constitute substantial compliance because it merely accused police brutality, not tort claims; did not give notice to an entity designated to investigate tort claims; and prompted an investigation that fundamentally differed from a tort claim investigation), *cert. denied*, 398 Md. 316, 920 A.2d 1060 (2007).

Here, the State's Attorney for Baltimore County received timely notice on June 24, 2010. Ryan, the Deputy State's Attorney, forwarded the notice to the County Attorney on July 1, 2010, and the County Attorney received it on July 2, 2010, outside the statutory notice period.   The State's Attorney's Office is not a constituent agency of Baltimore County, nor does it function in a way that is akin to Trigon in *Moore*.   Rather, it is a prosecutorial arm of the State of Maryland, with responsibilities entirely distinct from those of the County Attorney.   Under the Maryland Constitution, the State's Attorney for each county and Baltimore City is a constitutional officer,

*see* Md. Const., Art. 5, § 7, and it has been "squarely [held] that the State's Attorney is a state official under Maryland law." *Lowery v. Prince George's County*, 960 F.Supp. 952, 956 (D. Md. 1997) (citing *Valle v. Pressman*, 229 Md. 591, 599, 185 A.2d 368, 374 (1962) ("a State's Attorney is a State rather than a local officer")).

The LGTCA's requirement that "notice shall be given to the county solicitor or county attorney" could not be clearer. *See* C.J. § 5-304(c)(3)(iii). The State's Attorney bears no relation to the County Attorney. As the body charged with prosecuting crimes committed within its jurisdiction, the State's Attorney's Office certainly is not part of "the unit or division with the responsibility for investigating tort claims against that local government." *Moore*, *supra*, 371 Md. at 178, 807 A.2d at 647. Accordingly, plaintiff's notice to the State's Attorney or the State's Attorney's Office cannot be considered to have placed the County on notice within the statutory notice period, so as to constitute substantial compliance.

Ms. Johnson also contends that dispatching notice by regular mail within the statutory period constitutes substantial compliance, even if the notice was received beyond the statutory period. She insists that a mailing by June 25, 2010, the last day of the notice period, would constitute "timely notice of claim to the Baltimore County Attorney," and relies on Footnote 13 of *Wilbon*, 172 Md. App. at 200 n.13, 913 A.2d at 690 n.13, claiming that there "the Maryland Court of Special Appeals affirmed the Maryland Court of Appeals holding in *Grubbs v. Prince George's County*, 267 Md. 318[, 297 A.2d 754] (1972), that 'substantial compliance' is met by the date of mailing, not the date of receipt." ECF 32 at 2. Plaintiff asserts, ECF 34 at 4:

> It is reasonable to assume that [Ramsey's] June 23, 2010, letter to the County Attorney with a USPS cancellation mark used prior to June 25, 2010, was…received on June 24, 2010, and that any delay that caused the envelope to be marked July 7, 2010, by the County Attorney was caused by the USPS or the County Attorney, and not the plaintiff.

31

In addition, plaintiff argues that, "if the envelope was mailed by June 25, 2010" from Ramsey to the County Attorney, as she suggests the postmark establishes, the fact that it was not received by the County Attorney until July 7, 2010, is of no moment. ECF 32 at 2. Therefore, she urges the Court to deny defendants' motion to dismiss. *Id.*

Defendants concede that plaintiff could have substantially complied with the LGTCA by sending notice to the County Attorney by regular mail, rather than certified mail. But, they insist that the notice must be received, not merely dispatched, within the statutory period. In their view, plaintiff cannot substantially comply with the notice requirement by dispatching notice by regular mail to the proper party on the last day of the notice period, guaranteeing that notice would not be received *within* the notice period.

Plaintiff misconstrues *Wilbon*, 172 Md. App. 181, 913 A.2d 678. As defendants observe in ECF 33, at 1, plaintiff omitted a relevant portion of the passage she quoted from *Wilbon*, 172 Md. at 200, 913 A.2d at 690. There, the Maryland Court of Special Appeals said that the defendants "correctly" observed that "'a claimant may comply substantially with a notice requirement by giving notice to a person not specified in the statute or by regular rather than certified mail, [but] *the courts have not held that a claimant may submit the notice beyond the time for giving such notice*.'" *Id.* (Emphasis added). Indeed, the *Wilbon* Court distinguished *Grubbs,* 267 Md. 318, 297 A.2d 754, observing that in *Grubbs* notice was sent by *registered* mail on the 180th day, and the *Grubbs* Court based its holding of actual compliance "on a construction of the statute that notice by registered mail means mailing 'on or before the one-hundred-eightieth day without regard...to whether receipt occurs before or after the expiration of one hundred eighty days following injury.'" *Id.* at 200 n.13, 913 A.2d at 690 n.13 (quoting *Grubbs,* 267 Md. at 325, 297 A.2d at 758). The *Grubbs* Court specifically noted that "a notice

requirement generally imports receipt," but reasoned that "a different construction may result where the statute provides for notice by registered mail." 267 Md. at 323, 297 A.2d at 757.

Plaintiff suggests that the County Attorney's delayed receipt in notice was due to an error in processing at the County Attorney's office or by the USPS. But, she has not offered any evidence of such an error, apart from bald speculation. On the other hand, defendants have offered credible and persuasive evidence that they received notice from Ryan on July 2, 2012, and from Ramsey on July 7, 2012. Neither date is "within the statutory period." And, since *Grubbs*, the Maryland Court of Appeals has said that a "tort claimant has substantially complied with the notice provisions of the LGTCA" when the relevant recipient "*acquires* actual knowledge [of the claim] *within the statutory period*." *Moore*, *supra*, 371 Md. at 178, 807 A.2d at 647 (emphasis added). *Accord Hansen, supra,* 420 Md. 693 n.14, 25 A.3d 137 n.14; *Faulk, supra,* 371 Md. at 302, 808 A.2d at 1274.

Even if, *arguendo*, defendants' assertion is correct, such that substantial compliance is measured "by the date of mailing, not the date of receipt," ECF 32 at 2, plaintiff has not credibly shown that notice to the County Attorney was sent within the statutory period.

The "date stamp issue" has, as defense counsel said, "turned into a bad episode of CSI." ECF 33 at 1. Despite the parties' various contentions that the postmark establishes that the letter was or was not mailed prior to the expiration of the notice period, I find the postmark illegible and not helpful to either side. As indicated, however, the envelope clearly establishes that the letter was not sent by certified mail. Had the letter been sent by certified mail, return receipt

requested, as required, the need for such detective work would have been obviated; only plaintiff can be blamed for that failing.[16]

Mr. Ramsey's affidavit and his testimony are of little evidentiary value in regard to the timing of the mailing.  Although Mr. Ramsey averred in his affidavit that he sent both the letter to the State's Attorney and to the County Attorney by certified mail, on the same date, the affidavit, executed twenty-one months after the relevant events, is obviously inaccurate, at least in part; the envelope unequivocally established that the letter to the County Attorney was not sent by certified mail.  Mr. Ramsey also conceded in his testimony that his memory was not as reliable as the affidavit would suggest; when pressed at the hearing on April 26, 2012, about the circumstances surrounding the mailing of the notices, he used phrases to the effect of "I'm not sure" and "I don't recall."

Plaintiff relies on the cancellation mark and her counsel's conversations with an unnamed postal employee for the proposition that the notice "was processed by the USPS before June 25, 2010."  ECF 34 at 2.  She states that "informal discussions with the USPS indicate that its last date of service for the mark was June 25, 2010." *Id.*  Plaintiff has not submitted any evidence to that effect, however, and the press release circulated by the USPS, appended to ECF 34, contradicts that assertion; it states that the cancellation mark was used "through the end of June [2010]."  To be sure, if use of the cancellation mark ceased on June 30, 2010, this cuts against the sequence of events averred by defendants.[17]  But, the evidence does not make clear that Mr.

---

[16] In contrast, the plaintiff in *Grubbs* mailed the letter on the last day of the statutory period, by registered mail, obviating any issue as to the date of mailing or the date of receipt.

[17] The timing of the letters otherwise appears to comport with defendants' version of events: The County Attorney received notice of Ms. Johnson's claims on July 2, 2010, by way of Ryan's letter of July 1, 2010.  Ramsey learned of the defective notice from Ryan on or about July 2, 2010, and then sent a notice letter to the County Attorney, which was received on July 7, 2010.

Ramsey simultaneously mailed both letters, within the notice period.  In this regard, it is hard to ignore the distinctions between the two letters, discussed *supra*, including that one notice was sent by certified mail, while the other was not.  Moreover, if we are to engage in hypotheticals, it is just as likely that the cancellation mark was used for five weeks, into early July, rather than three weeks.

And, as defense counsel argued at the hearing, the Complaint itself "speaks volumes" as to the timing of the mailing of the notice because, from the outset, and before this issue surfaced, plaintiff never claimed the requisite notice was sent to the County Attorney within the statutory period.  As discussed, in the Complaint, at ¶ 48, plaintiff alleges: "Ms. Johnson submitted notice of her claims via United States Postal Service certified mail, return receipt requested, postage prepaid to the State's Attorney for Baltimore County on June 23, 2010," and, on "July 1, 2010, the State's Attorney's Office forwarded the notice of Ms. Johnson's claims to Baltimore County attorney John Beverungen."  If plaintiff had also provided timely notice to the County Attorney, as she now claims, surely she would have so alleged in her Complaint.

In sum, plaintiff cannot, with any accuracy or specificity, account for her own actions or those of her previous attorney.  Indeed, she offers no less than four accounts of what occurred, in dizzying rapidity, apparently with hopes that one will prove successful.

To illustrate, in her Opposition, plaintiff abandoned the contention in her Complaint that timely notice to the State's Attorney constituted actual compliance with the notice requirement.[18] Instead, she insisted that notice was received by *the County Attorney* within the statutory period, but that there must have been some error (of which plaintiff has no evidence) on the part of the County Attorney's office with respect to processing the mail.  *See* Opposition II at 9.  Then, in

---

[18] Plaintiff retained that argument with respect to *substantial* compliance.

another submission, ECF 32, plaintiff relied on her visual analysis of a totally illegible postmark to establish that notice was *sent* either on June 23, 2010, *or June 25, 2010*, veering from her previous insistence in her Surreply, at 4, that the affidavit of Ramsey definitively established that the notice was sent on June 23, 2010.  This shift in argument coincided with the evidence that Ramsey's affidavit was inaccurate in at least one respect: Ramsey claimed in his affidavit that the notice to the County Attorney was sent by certified mail, when demonstrably it was not.

Moreover, although plaintiff stated in her Opposition that "[t]here is no dispute that pursuant to the LGTCA, Ms. Johnson's notice of claims was *due* on June 25, 2010," Opposition II at 7 (emphasis added), and had indeed argued that the County Attorney received notice by that date, she subsequently asserted, in ECF 32, that the date of dispatch is dispositive, relying only on *Grubbs*, a 1972 case about actual compliance and registered mail, not substantial compliance and certified mail.  Plaintiff also ignored more recent Maryland cases that have said that, in order to demonstrate *substantial* compliance, the relevant body must "*acquire*[] actual knowledge *within* the statutory period…."  *Moore, supra,* 371 Md. at 178, 807 A.2d at 647 (emphasis added).  *See also Wilbon,* 172 Md. App. at 202, 913 A.2d at 691.  And, by the time plaintiff submitted ECF 34, she had abandoned any attempt to prove a definitive date of mailing, instead insisting that the notice "was processed by the USPS before June 25, 2010."  ECF 34 at 2.

It is clear that plaintiff sent notice to the State's Attorney on June 23, 2010, and it was received on June 24, 2010.  It is also evident that, on a date prior to July 7, 2010, plaintiff sent notice to the County Attorney, which was not received until July 7, 2010, outside the notice period.  On this record, I cannot find substantial compliance with the LGTCA's notice requirement.

*Good Cause*

As indicated, "[w]hen, as here, a litigant has not substantially complied with the notice provision, C.J. § 5–304 permits a waiver of the notice requirement, so long as there is 'good cause' for the dereliction." *White*, *supra,* 163 Md. App. at 150, 877 A.2d at 1140-41. *See also Moore, supra,* 371 Md. at 179, 807 A.2d 632; *Heron, supra*, 361 Md. at 270, 761 A.2d at 62. Under C.J. § 5–304(d), "if the plaintiff has met the burden of establishing good cause to excuse the failure to comply with the notice requirement, the defendant must 'affirmatively show that its defense has been prejudiced' by untimely notice." *White,* 163 Md. App. at 150, 877 A.2d at 1141 (discussing C.J. § 5–304(d), then C.J. § 5–304(c)).   In my view, plaintiff has failed to demonstrate good cause for her failure to comply with the notice requirement.

As noted, "The test for whether good cause exists…is 'whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances.'" *Heron,* 361 Md. at 271, 761 A.2d 56 (citation omitted).   "While courts generally consider a combination of factors, circumstances that have been found to constitute good cause fit into several broad categories: [1] excusable neglect or mistake…, [2] serious physical or mental injury and/or location out-of-state, [3] the inability to retain counsel in cases involving complex litigation, and [4] ignorance of the statutory notice requirement." *White*, 163 Md. App. at 152, 877 A.2d at 1142.   Notably, "ignorance of the law is no excuse when a party, represented by counsel, fails to give notice because he was unaware that notice was required." *Williams v. Montgomery Cnty.,* 123 Md. App. 119, 134, 716 A.2d 1100, 1107 (1998), *aff'd, Williams, supra,* 359 Md. 379, 754 A.2d 379.   *See also Bibum, supra,* 85 F. Supp. 2d at 565 ("Ignorance of the statutory requirement does not constitute good cause.").

Plaintiff insists that she has demonstrated good cause because, "even assuming *arguendo* that Ms. Johnson's notice of claims was only sent to the State's Attorney, it would have been excusable when judged by the reasonable person standard."  Opposition II at 13.  She states: "The complex and amorphous nature of the relationship between the State's Attorney that originally prosecuted Ms. Johnson and the County Attorney should not be exploited to frustrate the purpose of the LGTCA."  *Id.* at 12.

In *Ransom, supra,* 183 Md. App. at 586, 962 A.2d at 1034-35, the plaintiffs claimed that they "did not act without diligence in prosecuting their claim," as they "obtained counsel and relied upon counsel to take the steps necessary to pursue the claim" and "should not be made to pay for the mistake of their lawyers."  The Maryland Court of Special Appeals held that "it was not an abuse of discretion for the circuit court, in ruling on the motion to dismiss, to conclude that [Ransom and Hanock] had not shown good cause sufficient to waive the CJ section 5–304 notice requirements" merely because their attorney sent notice to the wrong party, the County Attorney for Prince George's County, rather than the County Attorney for Anne Arundel County, and rectified the mistake within a few weeks after the expiration of the 180 notice period.  *Id*. at 587, 962 A.2d at 1035.  Thus, the court rejected the claim of good cause.

*Halloran, supra,* 185 Md. App. at 194, 968 A.2d at 1118, also provides guidance. Halloran "sent notice of her tort claim to the State and had her counsel send a similar notice to Washington Gas," the company she believed to be responsible for the condition of the roadway on which she suffered injuries, "both within the 180 day notice period."  Yet, notice was not sent to the County Attorney for Montgomery County "until almost three months after the expiration of the notice period."  *Id.*  Halloran claimed that "she demonstrated good cause because she 'prosecuted her claim with that degree of diligence that an ordinarily prudent person would have

exercised under the same or similar circumstances,'" by sending notice "'to the entity she believed was responsible both for her injury and for repairing the condition that caused her injury.'"  *Id*. at 193, 968 A.2d at 1117 (citation omitted).   The Maryland Court of Special Appeals disagreed, and upheld the dismissal of her claims.   It reasoned that she "failed to articulate…any basis for failing to send proper notice to the County within the requisite time period."  *Id*. at 194, 968 A.2d at 1118.

What the Maryland Court of Special Appeals said in *Wilbon, supra,* 172 Md. App. at 210-11, 913 A.2d at 696, is also pertinent:

> [P]laintiff contends that [the] notice of claim,…which was sent four to six weeks after the expiration of the 180–day period, exhibited diligence of an ordinarily prudent person in pursuing a tort claim.  Plaintiff has not cited to any cases in support of the proposition that notice of a tort claim sent shortly after the expiration of the 180 day period constitutes good cause to justify a waiver of the notice requirement.  Indeed, the concept of diligence of an ordinarily prudent person must relate to actions taken during the 180–day period, not afterwards.  *Notice of a tort claim sent shortly after the expiration of the 180–day period, without sufficient explanation as to why such notice could not have been given within 180 days, cannot support a finding of the requisite diligence of an ordinarily prudent person.*  (Emphasis added.)

*Compare Hayat v. Fairely*, No. WMN–08–3029, 2009 WL 2426011, *6 (D. Md. Aug. 5, 2009) ("Plaintiffs served notice on Allegany County's County Attorney on May 9, 2008.  Five days later, on the 180th day after the alleged injury, Plaintiffs received a letter stating that Allegany County had no responsibility for the actions of Cumberland City employees because, although Cumberland is located within Allegany County, it is an incorporated municipality.  Plaintiffs immediately sent notice to Cumberland's Clerk of Courts, which reached her…on the 181st day." The District Court held that, "[g]iven the intertwined nature of Allegany County and the City of Cumberland, Plaintiffs' mistake in sending the notice to Allegany County's County Attorney falls under the category of excusable neglect or mistake.").

As defendants argue, "there is nothing complex or amorphous about the relationship between the State's Attorney's office and the County.  One is the prosecutorial arm of the State, the other is a Charter County."   Reply II at 5.   Moreover, *Ransom*, *Halloran*, and *Wilbon* establish that giving notice to an unrelated entity, without more, within a few weeks of the notice deadline, does not compel the finding of good cause for failure to comply with the LGTCA notice requirement.

Ms. Johnson contends that "[d]ismissing Ms. Johnson's state tort law claims would be unprecedented under Maryland law."  ECF 34 at 4.  She asserts: "[N]o Maryland court has ever dismissed a case when notice was served a week after a notice period has expired."  Opposition II at 10.  In a footnote on that page, plaintiff cites six reported opinions from Maryland state courts, including *Ransom, Heron, White, Rios,* and *Wilbon*, and one case from this Court, *Martino v. Bell*, 40 F. Supp. 2d 719 (D. Md. 1999), noting that in all of them, notice was filed at least "a month" late.  *Id.* at 10 n.36.  These cases do not lead to conclusion that "no Maryland court has ever dismissed a case when notice was served a week after a notice period has expired."  Rather, they suggest that there are no such *reported* cases.  More important, no Maryland appellate court has ever articulated the principle in a published opinion that the number of days by which notice is late has any bearing on compliance or good cause, with the exception of the matter of prejudice to the defense, which plaintiff concedes is irrelevant in the absence of a predicate showing of good cause.

In addition, plaintiff argues in ECF 34 that she has demonstrated good cause because "any delay that caused the envelope to be marked July 7, 2010, by the County Attorney was caused by the USPS or the County Attorney, and not the Plaintiff."  *Id.*  But, as discussed, *supra*,

plaintiff has not established that the delay, if any, was occasioned by the USPS or the County Attorney's Office.

Further, plaintiff insists that "'good cause' exists for this court to waive the notice requirements [sic]" because "Ms. Johnson believes her state tort law claims are meritorious." ECF 34 at 4. Plaintiff cites no authority for the proposition that having a good case is good cause to excuse failure to comply with the notice requirement.

Similarly, Ms. Johnson urges the court to "*avoid an unjust result*." ECF 34 at 4 (emphasis in original). I am unconvinced, however, that dismissal would be an "unjust result." At the hearing, plaintiff's counsel conceded that, with the exception of Counts Ten (assault and battery) and Sixteen (intentional infliction of emotional distress), plaintiff has brought analogous or duplicate claims under federal law, and those claims are not affected by the LGTCA.[19] Therefore, this ruling does not implicate the concern of "throw[ing] a plaintiff out of court, permanently." *Hansen, supra,* 420 Md. at 697, 25 A.3d at 139 (Adkins, J., dissenting). Indeed, plaintiff is only entitled to one recovery.

As plaintiff's notice to the Baltimore County Attorney was not timely, and as plaintiff has failed to demonstrate either substantial compliance with the LGTCA notice requirement or good cause justifying waiver of the requirement, defendants are entitled to summary judgment as to Counts Nine, Ten, Eleven, Thirteen, Fourteen, Sixteen, Seventeen, Eighteen, and "Nineteen."[20]

---

[19] In my view, the state claims of assault and battery are essentially covered by plaintiff's claims of Fourth Amendment violations, including allegations of excessive force. *See, e.g.* Count Seven, at Complaint ¶ 105 ("Acting without a warrant and under the color of law, the Responding Officers committed a battery upon Ms. Johnson…"). Moreover, it does not appear that the Complaint adequately pleads a claim of intentional infliction of emotional distress, a claim that is "rarely viable." *Farasat v. Paulikas,* 32 F. Supp. 2d 244, 247 (D. Md. 1997).

[20] In her Surreply, at 5, plaintiff argued that the LGTCA does not "affect individual capacity claims because the local government is not ultimately responsible for any damage award…." In her view, "Defendants' request that this Court dismiss the Plaintiff's claims

**Conclusion**

For the foregoing reasons, the Court will grant the motion to dismiss filed by defendants Kevin Kamenetz, the Baltimore County Council, and the Baltimore County Police Department (ECF 10).   And, the Court will grant the motion for summary judgment filed by Baltimore County, James Johnson, Al Jones, Jason Keller, Clifton Pugh, Rachel Jednorski, and Daniel Burns (ECF 11).  A separate Order, consistent with this Opinion, follows.


Date: July 3, 2012                                              _____/s/_____

                                                                              Ellen Lipton Hollander
                                                                              United States District Judge

---

asserted against them in their individual capacities is not within the ambit of a motion to dismiss based on the LGTCA." *Id.*  Plaintiff has not cited any case law in support of the assertion that she can sue defendants in their individual capacities and be relieved of compliance with the LGTCA such that the Court should dismiss the state claims only as they apply to defendants in their official capacities.

"'It is a well settled rule that contentions not raised in the argument section of the opening brief are abandoned.'"  *A Helping Hand, LLC v. Baltimore Cnty.,* 515 F.3d 356, 369 (4th Cir. 2008) (quoting *United States v. Al-Hamdi,* 356 F.3d 564, 571 n.8 (4th Cir. 2004)).  Moreover, the plain language of the LGTCA does not permit the construction argued by plaintiff.  It makes no distinction between suits against local government employees in their individual or official capacities, but requires notice generally.  *See* C.J. § 5-304(b) ("[A]n action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury.").  And, the Maryland Court of Special Appeals rejected plaintiff's argument in *Chappelle v. McCarter*, 162 Md. App. 163, 873 A.2d 458 (2005).  The court cautioned against "confus[ing] the notice requirement with the obligation of the local government to defend and indemnify" and concluded: "[T]he notice requirement…is not limited to actions in which the employee was acting within the scope of employment, although the local government's obligation to indemnify is so limited." *Id.* at 170-71, 873 A.2d at 462.  Accordingly, although plaintiff's allegation that defendants acted with malice may obviate the government's duty to pay any future damage award, that possibility does not excuse plaintiff from compliance with the notice requirement.